UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT L. DYKES-BEY #201541,                    Case No. 2:17-cv-00209

        Plaintiff,                                  Hon. Paul L. Maloney
                                             U.S. District Judge

    v.

THOMAS FINCO,  et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

On December 19, 2017, state prisoner Robert Dykes-Bey filed this civil right action pursuant to 42 U.S.C. § 1983.   Dykes-Bey alleged that he was denied religious meals that complied with his sincerely held religious beliefs and were also sufficiently nutritional during Ramadan in 2016.

In his original complaint, Dykes-Bey named the following defendants: Thomas Finco, Deputy Director of the Michigan Department of Corrections (MDOC); Special Activities Coordinator David Leach; Chippewa Corrections Facility (URF) Chaplain D. Rink; and URF Food Director Guglin.   (ECF No. 1.)   The original complaint also alleged violations of the First, Eighth and Fourteenth Amendments to the U.S. Constitution, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a).

In 2018, Defendants Finco, Leach and Rink filed a motion for summary judgment, asserting that Dykes-Bey had failed to exhaust his administrative remedies with respect to his claims against them.   (ECF No. 16.)   Also in 2018,

Dykes-Bey filed two motions to amend his complaint. (ECF Nos. 18 and 23.) He moved to voluntarily dismiss Defendant Finco and sought to add MDOC Deputy Director Kenneth McKee as a Defendant. On February 26, 2019, the Court granted these motions, which resulted in the dismissal of Defendants Finco, Leach, and Rink. (ECF No. 42.) The remaining Defendants are McKee and Guglin.

Pursuant to this Court's order of February 26, 2019 (ECF No. 42), Plaintiff's proposed amended complaint, which is included in ECF No. 18, is the controlling pleading. In that pleading, Dykes-Bey alleged that the food he received was inadequate, thus violating his Eighth Amendment right to be free from cruel and unusual punishment, and that he was denied a Ramadan meal, in violation of his rights under equal protection clause of the Fourteenth Amendment. (ECF No. 18, PageID.167-70.)

It should be noted that Dykes-Bey's amended complaint does not allege violations of the First Amendment or RLUIPA.[1]

Defendant McKee has filed a motion for summary judgment. (ECF No. 53.) McKee argues that Dykes-Bey's Eighth Amendment claim against him should be dismissed because Dykes-Bey was provided with nutritionally adequate meals, that

---

[1] This amended complaint does not allege a date when these violations took place. Dykes-Bey's original complaint, however, focused on violations occurring in 2016, and the grievances on which Dykes-Bey relies to show exhaustion of administrative remedies focus on events occurring in 2016. In addition, Dykes-Bey's amended complaint does not request prospective injunctive relief.

his Fourteenth Amendment claims for procedural due process and equal protection should be dismissed because Dykes-Bey offers no evidence to support these claims, and that he is entitled to qualified immunity on all Dykes-Bey's claims.

Dykes-Bey argues that he was not provided with a nutritional religious meal that complied with his sincerely held religious beliefs and that he was denied equal protection because he was not provided with an alternative menu as required by MDOC Policy Directive 05.03.150.

This report and recommendation also addresses Plaintiff's motion to serve the complaint on Defendant Guglin and to correct the spelling of her name to "Gugin." (ECF No. 60.)   Defendant Guglin worked at URF at the time of the events alleged in the complaint. Defendant Guglin has not been served with a complaint and is no longer employed at an MDOC prison.

The undersigned has reviewed the materials filed by the parties.   It is respectfully recommended that the Court grant Defendant McKee's motion for summary judgment, deny Dykes-Bey's motion to serve the complaint on Defendant Guglin (Gugin), and dismiss this case.

## II.   Factual Allegations

Dykes-Bey's amended complaint (ECF No. 18, PageID.167-70) is not a model of clarity.   He refers to actions that he says violated his sincerely held religious beliefs.   But when he lists the constitutional rights he says Defendants violated, he asserts violations of only the Eighth Amendment and the equal protection clause of the Fourteenth Amendment.

Dykes-Bey says that Defendant McKee has authority to make the final decision regarding requests for separate menus at the prison.   (ECF No. 18, PageID.167.) Dykes-Bey sues Defendant McKee in his individual and official capacities.   (*Id.*, PageID.167.)   Dykes-Bey says he sent his request for an alternative diet to David Leach and never received a response.   (*Id.*, PageID.169.)   Dykes-Bey accepted the lack of a response as an "unofficial denial" of his request.   (*Id.*)

Dykes-Bey says that Defendant Guglin was responsible for providing a nutritional diet at URF with adequate substitutions to accommodate a prisoner's religious preference.   (*Id.*, PageID.168.)   Defendant Guglin is also named in her individual and official capacities.   (*Id.*)

Dykes-Bey states that the Ramadan meal he received contained foods that he was unable to eat and failed to sustain his nutritional needs.   (*Id.*, PageID.169.) Dykes-Bey says that he cannot eat meat, meat by-products, dairy, dairy-by products, soy, soy-by products, peanut butter, peanut butter by-products, corn, beans (except navy), or grits.   (*Id.*)

Dykes-Bey further admits that his Moorish Science Temple of America religion does not recognize a religious meal.   (*Id.*)   However, he says he decided to follow the dietary restrictions that Buddhist's follow and the dietary restrictions that Nation of Islam practitioner's follow to create his own sincerely held religious diet.   (*Id.*, PageID.191-192 (Exh. F to Plaintiff's motion to amend complaint, or possibly an attachment to his amended complaint).)   Dykes-Bey claims that despite his request for an alternative menu, he never received his requested diet.

Dykes-Bey's grievances were denied and he says that his written requests were ignored.    Dykes-Bey specifically says that Defendants violated his **Eighth Amendment** rights.    Due to the inadequate food choices, Dykes-Bey says that he was forced to eat peanut butter and jelly sandwiches once or twice per week, causing him to want to quit Ramadan. (*Id.*, PageID.169.)    As a result, he was unable to "focus on building a spiritual relationship with God-Allah."    (*Id.*)

Defendants also alleges that Defendants violated his **Fourteenth Amendment rights to equal treatment** by failing to provide him an alternative meal as required by prison policy.    (*Id.*)    Dykes-Bey says that although Prison Policy Directive 05.03.150 states that the prison must provide meals for all religions, his sincere religious beliefs were not accommodated.    (*Id.*)

The undersigned interprets Dykes-Bey's amended complaint as an assertion of causes of action under the Eighth Amendment, for denial of adequate nutrition, and under the Fourteenth Amendment Equal Protection Clause, for failing to provide a religious meal.

### III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  Analysis

### 1.  Eighth Amendment - nutritional meals

Dykes-Bey has been a member of the Moorish Science Temple of America (MTSA) since 2012. (*See* ECF No. 54-5, PageID.447 (MDOC Religion History for Plaintiff, which shows that Plaintiff was affiliated with the Moorish Science Temple of America (MSTA) from 2002 to 2011, then affiliated with Buddhism for about one year, then went back to MSTA in July 2012 and remained affiliated with MSTA).) Dykes-Bey says that he adopted the dietary beliefs of Buddhism in 2012 and, in 2015, he combined those beliefs with the beliefs of the Nation of Islam.   (*Id.* and, ECF No. 54-4, PageID.431 (affidavit of Defendant McKee).)   Dykes-Bey says that he made a request for an alternative meal for Ramadan in 2016.   He says that he never received the requested alternative meal, which caused him to select items from the Ramadan meal bag, trade for other items, and to reluctantly eat peanut butter and jelly sandwiches twice per week during Ramadan in 2016.   Dykes-Bey says that what he selected to eat was not nutritionally adequate and diminished his spiritual experience

in violation of his Eighth Amendment rights.   Dykes-Bey does not explain how either of the remaining Defendants were involved in his claim that he was denied appropriate meals.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.   Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."   *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).   The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."   *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).   The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."   *Rhodes*, 452 U.S. at 348 (citation omitted).   Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."   *Ivey*, 832 F.2d at 954.   "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).   As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."   *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate ... food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832).   The Constitution "does not mandate comfortable prisons," however.   *Rhodes*, 452 U.S. at 349.   Temporary inconveniences, such as being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, fail to demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.   *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim") (internal citation omitted).

Similarly, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation.   *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day

for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals."   *Richmond*, 450 F. App'x at 456.   In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566.

Dykes-Bey is not alleging that he was denied food or that he was not receiving the same food that every other prisoner received during Ramadan 2016.   As a Moorish Science Temple of America follower who decided to adopt both Buddhist and

Nation of Islam dietary restrictions, Dykes-Bey says that he did not receive a meal that complied with his religious beliefs.   As result, he states that he could not eat an adequate meal to sustain his nutritional needs.   Dykes-Bey alleges that he was unable to eat all the food that was provided him due to his religious beliefs and, as a result, he was not able to eat a nutritional meal.

In the opinion of the undersigned, Dykes-Bey has failed to offer evidence establishing a genuine issue of material fact as to his Eighth Amendment claim. "[A]n allegation that a prisoner has elected not to consume the 'whole meals' provided by the prison-and solely because of his religious preference-does not state a claim for violation of the Eighth Amendment."   *Mobley v. Smith*, 4:05-cv-153, 2007 WL 1650934 *5 (W.D. Mich. June 4, 2007.)   Dykes-Bey has not shown that he was denied meals, and his assertion that he could not eat all the food that was provided to him due to his religious beliefs fails to rise to the level of an Eighth Amendment violation because it is undisputed that he was provided with fully nutritional meals each day. In addition, Dykes-Bey admits that he ate each day by selecting food, trading for food, and making peanut butter and jelly sandwiches at least twice per week during Ramadan 2016.

The undersigned concludes that Dykes-Bey has failed to offer evidence establishing a genuine issue of material fact as to his Eighth Amendment claim

## 2.  Qualified Immunity

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232-233. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

### A.   Official Capacity Claim

To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has

> Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). To the extent that Dykes-Bey seeks money damages, costs and fees from Defendants in their official capacity, that part of his lawsuit is barred by sovereign immunity.[2]

**B.   Fourteenth Amendment – equal protection**

Dykes-Bey says that he was treated differently from other prisoners who were accommodated with alternative religious meals as set forth by MDOC Policy Directive (PD) 05.03.150. That PD provides that prisoners may request an alternative meal if their religious needs are not being met by the religious meal available at the prison. (ECF No. 54-4, PageID.430 (Affidavit of Defendant McKee, quoting PD 05.03.150).)

---

[2]   "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id*. Dykes-Bey does not seek prospective relief.

Dykes-Bey says that his request for an alternative religious meal was never acted upon and he was forced to eat only portions of the meal provided to him during Ramadan 2016, and that he ate peanut butter and jelly sandwiches twice per week. Dykes-Bey says that as a MSTA religious follower who has adopted the dietary restrictions of Buddhist and Nation and Islam followers, he was not provided an alternative menu under PD 05.03.150.   Dykes-Bey argues that this violated his equal protection rights.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal Protection Clause, the government is prohibited from engaging in discrimination that: (1) burdens a fundamental right; (2) targets a suspect class; or (3) "intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).   When neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies.   *Midkiff v. Adams Cty.*, 409 F.3d 758, 770 (6th Cir. 2005).

In the opinion of the undersigned, Dykes-Bey has failed to show that Defendant McKee violated his clearly established rights under the Equal Protection Clause.   Defendant McKee submitted an affidavit explaining that the dietary requirements of Dykes-Bey are different than both the dietary requirements of Buddhism and the Nation of Islam.   In addition, it is noted that Dykes-Bey failed to submit a timely request for an alternative diet and that McKee had no personal involvement with Dykes-Bey.   McKee explained in his affidavit:

> 4.   Upon review of Dykes-Bey #201541's religious preferences, since 2012 the Dykes-Bey has identified his religious preference as Moorish Science Temple of America (MTSA).  This religion has no dietary requirements other than not to eat pork or pork by products.  Dykes-Bey claims to have adopted the dietary beliefs of Buddhism in 2012 and in 2015 included with those beliefs the dietary beliefs of the Nation of Islam.  The religious dietary beliefs of both religions differ greatly from those of MSTA. (Ex. 2)
>
> 5.   It should also be noted that he made the initial request for the alternative menu for the month of Ramadan.  However, it was not submitted in time for that year, and the prisoner failed to explain why his sincerely held religious dietary beliefs are only held for this 30-day period.
>
> 6.   I had no personal involvement with Dykes-Bey in any capacity.

(ECF No. 54-4, PageID.431.)

Dykes-Bey has failed to explain exactly how Defendant McKee was involved in denying him a religious meal.   It appears that Dykes-Bey named Defendant McKee as a Defendant solely because he is the Deputy Director of the MDOC.   Dykes-Bey has not shown that he made a timely request for an alternative religious meal for

Ramadan 2016 to Defendant McKee.    Further, assuming that Defendant McKee was involved in denying Dykes-Bey an alternative religious meal, Dykes-Bey has not established that he was treated differently by Defendant McKee.    The United States Supreme Court explained that a claim that an individual was treated differently based upon discretionary decision-making will not always support a violation of the Equal Protection Clause.

> "[t]here are some forms of state action, however, which by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments.   In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.   In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise."

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008).   In the opinion of the undersigned, Dykes-Bey has failed to present evidence establishing a genuine issue of material fact as to his Fourteenth Amendment equal protection claim.

### C.   Claims not alleged by Dykes-Bey in his amended complaint

### 1.   Procedural Due Process

Although Dykes-Bey never raised a procedural due process claim in his complaints or specifically in his controlling amended complaint (ECF No. 18), Defendant McKee argues that the claim should be dismissed.   Dykes-Bey argues in his response brief that he has factually supported a procedural due process claim, but he never explains how his procedural due process rights were violated by Defendant McKee.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing and then sentencing him to segregation for misconduct.   *Sandin*, 515 U.S. at 474.   A plaintiff seeking to allege a procedural due process violation based on a state-created liberty interest must not only show the restraint at issue is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin*, 515 U.S. at 484; *Rimmer-Bey*, 62 F.3d 789 790-791 (6th Cir. 1995.).   Because Dykes-Bey fails to allege facts constituting an "atypical and significant hardship," and fails to explain what clearly established procedural protections were violated by Defendant McKee, it is recommended that the Court grant Defendant McKee qualified immunity as to any claim Dykes-Bey may be asserting under the Procedural Due Process Clause.

## 2.   First Amendment

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.   *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).   To establish a violation, Dykes-Bey must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.   *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v.*

*Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

If the Court broadly reads Dykes-Bey amended complaint as asserting a First Amendment claim against Defendant McKee, it is recommended that the Court find that Defendant McKee is entitled to qualified immunity for the following reasons:

First, Dykes-Bey has not established that Defendant McKee took any action or was involved in the alleged denial of meals during Ramadan 2016.   (ECF No. 54-4, PageID.431.)   Dykes-Bey admits that he sent his request to David Leach and is only suing Defendant McKee because he is the MDOC Deputy Director.   (ECF No. 58-1, PageID.487.)   Dykes-Bey alleged:

> 8. Defendant Kenneth Mckee, held the Responsibility And Obligation As the Deputy Director, (CFA), to Approve or disApprove Requests for diets that Comports to the prisoner Requesting the diet Religious beliefs, if the main Chow lines do not provide An Adequate diet (See Policy Directive 05.03.150). I Sent in my Request to David Leach As instructed by policy, And I never Received A Response, which Constitutes As An unofficial denial, depriving me of the means to Sincerely practice my Religious beliefs.

(ECF No. 18, PageID.169.)   Nothing within Defendant McKee's affidavit states that he was personally involved in denying Dykes-Bey's request for an alternative meal. (ECF No. 54-4, PageID.431.)   The Sixth Circuit made it clear that liability under § 1983 cannot be based on a mere failure to act.   *Shehee v. Luttrell*, 199 F.3d 95, 300 (6th Cir. 1999.)

Second, Dykes-Bey's request for an alternative menu for Ramadan 2016 was not timely.   (ECF No. 54-4, PageID.431.)   Dykes-Bey argues that there are no time

requirements to make a request for an alternative menu.   However, the request must give the prison enough time for consideration and enough time to develop an alternative menu once approved.

Third, as a MSTA follower during Ramadan 2016, Dykes-Bey did not have any dietary requirements.   (ECF No. 54-4, PageID.431.)   Dykes-Bey asserts that although the religion has no dietary restrictions, he is free to make up his own. (ECF No. 58, PageID.469.)

Fourth, there exists no clearly established law as set forth by the United States Supreme Court that requires Defendant McKee to provide an alternative religious meal to a MSTA prisoner who adopted the Buddhist and Nation of Islam diet for Ramadan 2016.   In the opinion of the undersigned, it was not clearly established in 2016 that the MDOC vegan religious meal diet failed to accommodate the religious beliefs of those participating in Ramadan.   *McKenzie v. Michigan Dep't of Corr.*, No. 2:13-cv-291, 2013 WL 5963115 (W.D. Mich. Nov. 8, 2013); *Davis v. Heyns*, 2017 WL 8231366 (6th Cir. 2017) (religious vegan meal provided by the prison satisfied First Amendment and RLUIPA standards for Muslim prisoner claiming that he was denied an alternative meal under MDOC Policy Directive 05.03.150).

Fifth, Dykes-Bey requested a combined Buddhist and Nation of Islam Diet, but he was not a member of either religion during Ramadan 2016.   (ECF No. 54-5, PageID.449.)

Sixth, Dykes-Bey was provided a religious meal and ate portions of the food that he believed complied with his Buddhist and Nation of Islam diet restrictions during Ramadan 2016. (ECF No. 58-1, PageID.488, 490.)[3]

## V.   Defendant Guglin

Dykes-Bey has filed a motion to serve the complaint based upon the new address provided to the Court, and to correct the name of Defendant Guglin to Gail Gugin.   (ECF No. 60.)   Dykes-Bey states that he did not know when he filed his complaint that Defendant Guglin no longer worked for the MDOC.   Dykes-Bey says that he sent a letter to Humanity for Prisoners and asked for that organization to locate Defendant Guglin (Gugin).

Dykes-Bey states that on January 3, 2020, he received a text message indicating that the "information" had been sent to this Court.   (ECF No. 60, PageID.502.)   The docket sheet does not reflect a new address for Defendant Guglin (Gugin) or that the Court was provided with any new address or information for Defendant Guglin (Guglin) from either Dykes-Bey or any third party.

The U.S. Marshals Service unsuccessfully attempted to serve Defendant Guglin with waiver of service twice prior to May 9, 2018, and a third time prior to December 13, 2018.   On February 26, 2019, this Court issued an order to serve

---

[3]      Further, to the extent that Dykes-Bey is asserting a claim under RLUIPA, RLUIPA his cause of action is limited to injunctive relief as money damages are not available under the statute.   *Sossamon v. Texas*, 563 U.S. 277 (2011).   Dykes-Bey's claims arose and ended during Ramadan 2016.   Therefore, any claim under RLUIPA is moot.

Defendant Guglin with a summons and complaint.    (ECF No. 42, PageID.371.)    The Clerk's Office issued a summons to Defendant Guglin and it was returned to the Court unexecuted on March 14, 2019.    (ECF No. 46.)

Dykes-Bey has failed to provide the proper address for Defendant Guglin (Gugin) and the U.S. Marshals Service has been unable to serve her a summons and complaint since May 9, 2018.

Dismissal of an unserved Defendant without prejudice is appropriate where service was not made within 90 days after the complaint was filed and plaintiff was provided with notice of the dismissal.    Fed. R. Civ. P. 4(m).    The U.S. Marshals Service attempted to serve Defendant Guglin four times and was unable to serve her. For that reason, dismissal of Defendant Guglin (Gugin) without prejudice is appropriate.

In addition, dismissal of Defendant Guglin will not prejudice Dykes-Bey. Although Dykes-Bey has not specifically made allegations against Defendant Guglin, it appears that he is asserting that she failed to provide him with a nutritional meal in violation of his Eighth Amendment rights.    The amended complaint states: "Defendant unknown Guglin was the Food Service Director at the Chippewa Correctional Facility, and was in charge of providing an adequate, nutritional diet, which consists of adequate substitutions to accommodate a prisoner's religious requirements."    (ECF No. 18, PageID.168.)

For the reasons explained, it is recommended that the Court dismiss Dykes-Bey's Eighth Amendment claims.    If the Court accepts this recommendation and

dismisses Dykes-Bey's Eighth Amendment claims, Dykes-Bey would not have an actionable claim left to assert against Defendant Guglin.   Accordingly, it is recommended that the Court dismiss Defendant Guglin without prejudice and deny Dykes-Bey's motion to serve the complaint on Defendant Guglin (Gugin).

## VI.   Recommendation

I respectfully recommend that the Court GRANT Defendant McKee's motion for summary judgment (ECF No. 53) and dismiss Defendant McKee with prejudice.

I further recommend that the Court DENY Plaintiff Dykes-Bey's motion to serve the complaint on Defendant Guglin (Gugin).   (ECF No. 60.)

It is recommended that the Court DISMISS Defendant Guglin (Gugin) without prejudice due to the failure to serve her with a summons and complaint.

If the Court accepts this recommendation, this case will be dismissed in its entirety.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:    May 15, 2020                              /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U.S. MAGISTRATE JUDGE